UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    F.M. Butt Hotels, Corp.,                        Bankruptcy Case No. 19-20310-PRW
                                                                                     Chapter 11
                               Debtor.

_____

**DECISION AND ORDER
GRANTING MOTION TO DISMISS FOR CAUSE
AND BARRING DEBTOR FROM FILING A CHAPTER 11
CASE FOR 180 DAYS**

PAUL R. WARREN, U.S.B.J.

       This Chapter 11 case was filed April 5, 2019. It is the third Chapter 11 case filed by F.M. Butt Hotels, Corp. since March 5, 2019, the previous two cases having been dismissed by the Court. (*See* Case Nos. 19-20222-PRW & 19-20234-PRW). This case and its predecessors were filed solely to stop a mortgage foreclosure action brought by Access Point Financial, LLC—the holder of a first-priority mortgage lien against FMBHC's hotel property.

       Access Point has moved for an order terminating the automatic stay or, alternatively, for an order dismissing this case. (ECF Nos. 19, 39). The motion was heard on May 2, 2019. In addition to hearing from counsel to Access Point and FMBHC, the Court heard from James VanBrederode, Police Chief for the Town of Gates, and David Tytler, Fire Marshal for the Town of Gates regarding their personal observations, in their professional capacities, of the physical condition of the hotel and the public health and safety threats posed by the dilapidated conditions at the hotel.

The evidence received by the court demonstrates that cause exists to convert or dismiss this case under 11 U.S.C. §§ 1112(b)(1), (b)(4)(A), (b)(4)(B), (b)(4)(C), (b)(4)(D), (b)(4)(E) and (b)(4)(H).  The exceptions under § 1112(b)(1) and (b)(2) do not apply in this case.  In the exercise of its discretion, the Court finds that dismissal is in the best interests of creditors, the estate, and necessary to protect the health and safety of the public.  The motion to dismiss of Access Point is **GRANTED**.  As a consequence, the portion of the motion requesting stay relief is rendered **MOOT**.  The Debtor is **BARRED** from filing a Chapter 11 case for a period of 180 days from the date this case is closed, in the exercise of the Court's discretion under 11 U.S.C. § 105(a), to afford Access Point time to foreclose its mortgage lien without further interference by the Debtor.  The 180-day bar to the Debtor filing a Chapter 11 petition is intended to be nationwide in its application and extends to any person or entity to whom the Debtor transfers or attempts to transfer the real property at issue in this case, to ensure that the Debtor cannot end-run this decision.

## I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

## II.

## FACTS[1]

F.M. Butt Hotels, Corp. owns and operates a hotel located at 911 Brooks Avenue in the Town of Gates. (ECF No. 1 at 1). Some longtime Rochestarians may fondly remember that same location—years ago—as being the site of the Holiday Inn Airport. More recently, and at the time the hotel was purchased by FMBHC, the hotel was known as the Ramada Plaza Rochester Airport. A detailed description of the lending transaction between FMBHC and Access Point is set out in the creditor's motion. (ECF No. 19 at 4-9 & Exhibits A-H). For our purposes, it suffices to say that, in May 2017, Access Point loaned FMBHC $4,280,000 to purchase the hotel real property, secured by a mortgage, assignment of rents, security agreement and fixture filing. (*Id.* at 4-5 & Exhibits A-E). Access Point loaned an additional $1,600,000 to FMBHC to be used by FMBHC to purchase new furniture, fixtures and equipment for the hotel, secured by a first priority lien on all furniture, fixtures and equipment. (*Id.* at 5-6 & Exhibits F-H). The total combined principal amount of those loans was $5,880,000.

Almost exactly one year later, FMBHC defaulted on its payment obligation to Access Point. (ECF No. 19, Ex. I). After FMBHC failed to respond to a notice of default, Access Point accelerated the indebtedness. (*Id.* at Ex. J). At the end of February 2019, Access Point filed an action against FMBHC in the Monroe County Supreme Court to foreclose its mortgage. (*Id.* at Ex. M). The State Supreme Court issued an Order appointing a Receiver to take possession of the hotel. (*Id.*). On March 15, 2019, when the court-appointed Receiver attempted to take control of the hotel, the principal of FMBHC asserted (untruthfully) that the hotel had filed a

---

[1] To get a full flavor of the factual background in this case, a quick reading of this Court's earlier decision in Mr. Butt's personal Chapter 11 case may be helpful. *See In re Butt*, Case No. 19-20076-PRW, 2019 Bankr. LEXIS 1032 (Bankr. W.D.N.Y. Apr. 4, 2019) (Warren, J.).

Chapter 11 petition. (*Id.* at 8). So, the Receiver left the premises. (*Id.*). Mr. Butt later that morning filed a Chapter 11 petition on behalf of FMBHC, as a *pro se* corporate debtor. (*See* F M Butt Hotels Corp, Case No. 19-20222-PRW). The Court promptly dismissed that petition *sua sponte*. (Case No. 19-20222, ECF No. 2).

A few days later, on March 18, 2019, the Received again attempted to take possession of the hotel property. (ECF No. 19 at 8). FMBHC filed a second Chapter 11 petition, this time through James M. Joyce, Esq., as its attorney. (*See* F. M. Butt Hotel Corp., Case No. 19-20234-PRW.) Because the petition was bare bones, without any required statements or schedules, the Court immediately entered a case management Order directing FMBHC to file all required statements and schedules by April 1, 2019 or face dismissal, as required by the Federal Rules of Bankruptcy Procedure. (Case No. 19-20234, ECF No. 4). Both Access Point and the United States Trustee quickly filed motions to dismiss. (Case No. 19-20234, ECF Nos. 16, 23). Before those motions could be heard, on April 4, 2019, the Court entered an Order dismissing the case *sua sponte* because FMBHC failed to comply with the Court's case management Order. (Case No. 19-20234, ECF No. 24).

The next day, FMBHC filed its third Chapter 11 petition, commencing this case, again through James M. Joyce, Esq., as counsel. (ECF No. 1). The Court promptly entered case management Orders. (ECF Nos. 6, 7). FMBHC has failed to fully comply with those Orders. FMBHC also failed to retain counsel—more to the point, counsel has not properly sought to be appointed and has ignored the Clerk of the Court's deficiency notice advising him of that fact. (ECF Nos. 27, 28, 30).

Access Point promptly moved (again) to dismiss this case as a bad faith filing, or in the alternative, for relief from the automatic stay. (ECF No. 19). The motion goes into great factual

detail and includes numerous citations to points and authorities in support of the motion. Shortly after the Access Point motion was filed, the UST filed a motion to dismiss, but that motion was not scheduled to be heard with the Access Point motion. (ECF Nos. 33, 34). Both motions point to a number of factors justifying dismissal—the most troubling of which was the alleged lack of liability, casualty, workers' compensation and disability insurance. (ECF No. 19 at 16; ECF No. 33 ¶ 11). Recall that FMBHC owns and operates a hotel, presumably visited by members of the public. So, the alleged lack of insurance is an exceedingly concerning situation. FMBHC filed opposition to the Access Point motion, consisting of a page and one-quarter of generalities about the value of the property and the hopes for post-petition financing. (ECF No. 36). No mention was made by FMBHC of the lack of insurance, unauthorized use of cash collateral, or the actual condition of the property in its response. Instead, FMBHC indicated that it had agreed to a post-petition secured financing commitment, without Court approval. (*Id.* ¶ 8 & Ex. B).

The Court held a hearing on the motion on May 2, 2019. During the hearing, Mr. Butt testified on behalf of FMBHC. Based on Mr. Butt's testimony, it is uncontroverted that FMBHC had no insurance from March 19, 2019 through at least April 12, 2019—during which time FMBHC continued to operate the hotel. It is uncontroverted that the restaurant at the hotel was (and is still) closed by order of the Monroe County Department of Public Health because of a significant rodent infestation. It is also uncontroverted that the hotel bar, known as Wheels Up Tavern, was closed by order of the New York State Liquor Authority and the liquor license of FMBHC has been suspended. Both of these events took place while FMBHC was under the protection of this Court, but lawfully done in the exercise of police powers.

Access Point has a lien on all rents and profits generated by operation of the hotel, and it has objected to the use of its cash collateral. (ECF No. 19, Ex. C). At oral argument, counsel to

5

FMBHC asserted that no cash collateral was being used because the credit card sales accounts had been suspended. However, Mr. Butt interrupted and testified to a very different story; he admitted that the cash collateral of Access Point was being used by FMBHC to pay employee wages, maintenance and repair costs and other expenses. At no time did FMBHC seek the Court's permission to use cash collateral and Access Point did not consent to its use.

To make things worse, FMBHC entered into a loan commitment on April 25, 2019 to obtain a post-petition secured loan. No request was made by FMBHC for authorization to obtain such financing as required by 11 U.S.C. § 364(c). The commitment required the payment of a non-refundable deposit of $15,000 by FMBHC. Mr. Butt admitted that FMBHC obtained a loan for $15,000 from the Butt family. No Court approval for that borrowing was sought by FMBHC and the Court did not approve that borrowing. Further, FMBHC failed to provide the utility provider (RG&E) with adequate assurance of payment that is satisfactory to the utility for the utility service, as required by 11 U.S.C. § 366(c). The 30-day period to do so expires this weekend. As a result, the utility provider will have the right, under 11 U.S.C. § 366(c)(2), to discontinue utility service to the hotel—an exceedingly serious situation for a hotel or any commercial business that entertains members of the public.

All of this is troubling, but it gets much worse. A number of government officials from the Town of Gates attended the hearing, including the Town Supervisor, the Police Chief, the Fire Marshal and a Police Lieutenant. The Court granted the request of Chief VanBrederode and Fire Marshal Tytler to be heard in connection with the motion. Both Chief VanBrederode and Fire Marshal Tytler provided the Court with a detailed description of the physical condition of the hotel, safety and security issues concerning the hotel, levels of occupancy at the hotel, and changes in the physical condition of the hotel in recent years—all based on the personal

6

knowledge of the Police Chief and Fire Marshal acquired from their many official visits and inspections of the hotel. The facts offered by Chief VanBrederode and Fire Marshal Tytler were not refuted by Mr. Butt or counsel to FMBHC in any respect.

The Police Chief and Fire Marshal offered a number of facts showing that the hotel poses a significant risk to public safety. First, the Court was advised that FMBHC failed to keep a daily "guest manifest" as is required by state law. (*See* N.Y. Gen. Bus. § 204). According to Fire Marshal Tytler, a manifest is required so that first responders can immediately determine which specific rooms are occupied and the identity of occupants. The failure to keep such a manifest is punishable as a misdemeanor under state law. Next, because of significant water damage—followed by the growth of black mold—resulting from unrepaired roof damage caused by a storm in early 2018, two entire wings of the hotel were closed by order of the Fire Marshal. In fact, Fire Marshal Tytler testified that the physical condition of these two wings of the hotel are so dangerous, he has ordered firefighters not to enter these areas. The two wings comprise 75% of the 200 rooms at the hotel. Stated differently, 150 of the 200 rooms at the hotel have been ordered "off limits" by the Fire Marshal. Mr. Butt conceded that only 25% of the rooms at the hotel are habitable—and that's probably optimistic. The good news, according to Chief VanBrederode (who patrols the parking lot routinely several times a week) is that there appear to be very few hotel guests based on the absence of cars in the parking areas. Perhaps due to the "deplorable" conditions of the hotel (the Fire Marshal's word), the hotel was deidentified as a "Ramada Inn" in March 2019 by Wyndham Corporation. The loss of identification as part of a national hotel chain most certainly further devalues the hotel property.

And there is much more troubling news. This case was filed on April 5th, a Friday. Mr. Butt testified that one day later, FMBHC hosted a "hip hop party"—the third such "rave" hosted

7

by FMBHC. Previous raves hosted by the hotel brought in 200-300 guests. Mr. Butt testified that because of crowd problems encountered during the previous two raves, he requested assistance with crowd control from the Gates Police Department. Mr. Butt knew that there existed the potential for skirmishes between attendees at the April 6 rave, based on his prior experiences. And Mr. Butt knew more—he knew that the liability and casualty insurance on the FMBHC hotel property had expired on March 19, 2019. Knowing that the hotel lacked any insurance coverage, Mr. Butt allowed the rave to take place on the FMBHC premises on April 6, 2019 (and he presumably continued to rent rooms to guests). According to Chief VanBrederode, while the crowed was disbursing around 1:30 A.M. on April 7, 2019, some fights broke out in the parking lot. At the time, there were 15-20 uniformed police officers on the premises. While Gates Police officers were arresting the combatants, gun shots were fired from a vehicle located in the parking lot on the premises. Fortunately, no one was hit by the bullets. And, all this happened at a hotel unknowingly being operated by Mr. Butt with no liability or casualty insurance.

Police Chief VanBrederode testified that because of the imminent threat to public health and safety, his office (on behalf of the Town of Gates) immediately sought an emergency order from the New York State Liquor Authority suspending FMBHC's liquor license to operate Wheels Up Tavern at the hotel. Finding that "in order to protect the public health, safety and welfare, it is imperative that emergency action be taken against the immediate and continued danger resulting from [FMBHC's] illegal activities and failure to adequately supervise the conduct of the licensed premises," on April 8, 2019 the State of New York issued an "Emergency Summary Order of Suspension." *See* Matter of F. M. Butt Hotels Corp., dba Ramada Plaza Rochester Airport/Wheels Up Tavern, Case Nos. 132851 & 126350 (April 8, 2019

NYS Liquor Authority). At this moment, the hotel's restaurant remains closed (due to a significant rodent infestation) and its tavern remains closed (due to a series of liquor license violations beginning in June 2018 and culminating with gun play on the premises during the early morning hours on April 7, 2019), further depressing the value of the hotel.

Finally, at oral argument the Court asked counsel to FMBHC about the alleged failure to provide the UST with income and expense reports and federal tax returns. Mr. Joyce assured the Court that copies of FMBHC tax returns were emailed to the UST "two weeks ago." When pressed, Mr. Joyce then indicated that FMBHC provided the UST with its tax returns "in the last case." (Case No. 19-20234). Mr. Joyce assured the Court that was the case. Following the hearing, the Court was advised that FMBHC did not (ever) provide copies of its tax returns to the UST in Case 19-20222, or in case 19-20234, or in this case.[2]

### III.

### DISCUSSION

**A.     "Cause" Has Been Demonstrated Under 11 U.S.C. § 1112(b)**

This Court has had numerous occasions to consider the appropriateness of conversion or dismissal of a Chapter 11 bankruptcy case under 11 U.S.C. § 1112(b). *In re Butt*, No. 19-20076-PRW, 2019 Bankr. LEXIS 1032 (Bankr. W.D.N.Y. Apr. 4, 2019); *In re Anvil Holdings, LP*, 595 B.R. 622 (Bankr. W.D.N.Y. 2019); *In re 250 Pixley Rd., LLC*, No. 17-20125-PRW, 2018 Bankr. LEXIS 765 (Bankr. W.D.N.Y. Mar. 16, 2018); *In re Encore Prop. Mgmt.*, 585 B.R. 22 (Bankr. W.D.N.Y. 2018); *In re Rondaxe Props., LLC*, No. 15-20222, 2015 Bankr. LEXIS 2140 (Bankr.

---

[2]     Mr. Joyce may wish to familiarize himself with Rule 9011(b)(3) FRBP—and it would be a good idea to glance at Rule 9011(b)(1), (2) and (4) FRBP at the same time.

9

W.D.N.Y. June 30, 2015); *In re Seneca BioEnergy, LLC*, No. 14-21470, 2015 Bankr. LEXIS 1685 (Bankr. W.D.N.Y. May 19, 2015); *In re Spencerport Dev., LLC*, No. 14-21154 (PRW), 2014 Bankr. LEXIS 4909 (Bankr. W.D.N.Y. Dec. 4, 2014). Dismissal or conversion of a Chapter 11 case *must* be granted under 11 U.S.C. § 1112(b), if the moving party demonstrates cause, unless the Court finds that either of the exceptions created under § 1112(b)(1) or (b)(2) apply. *Anvil*, 595 B.R. at 628-29; *Rondaxe*, 2015 Bankr. LEXIS 2140, at *4-5; *Seneca*, 2015 Bankr. LEXIS 1685, at *6; *Spencerport*, 2014 Bankr. LEXIS 4909, at *3-4. Here, no party in interest has requested the appointment of a Chapter 11 trustee or examiner, and no "unusual circumstances" have been identified that would make conversion or dismissal contrary to the best interests of creditors. 11 U.S.C. § 1112(b)(1) and (2). The court finds that the exceptions under § 1112(b)(1) and (b)(2) do not apply in this case.

The moving party bears the initial burden to establish, by a preponderance of the evidence, the existence of cause to convert or dismiss a Chapter 11 case. *Anvil*, 595 B.R. at 629; *Rondaxe*, 2015 Bankr. LEXIS 2140, at *5; *Seneca*, 2015 Bankr. LEXIS 1685, at *7; *Spencerport*, 2014 Bankr. LEXIS 4909, at *4; 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. rev.). If the moving party establishes cause—and the Court finds (as it has) that the exceptions under § 1112(b)(1) and (b)(2) do not apply—the statute commands that the Court *must* convert or dismiss the Chapter 11 case. 11 U.S.C. § 1112(b)(1). Here, Access Point and the Town of Gates have demonstrated that cause to convert or dismiss exists. The facts, as testified to by Chief VanBrederode and Fire Marshal Tytler, demonstrate a substantial decline in the condition of the estate property—rendering it an immediate threat to public health and safety, and the Court finds that there does not exist a reasonable likelihood of rehabilitation given the nearly $7.0 million dollar secured debt load. *See* 11 U.S.C. § 1112(b)(4)(A). The Court finds that

10

knowingly operating a hotel without mandatory liability, casualty, workers' compensation and disability insurance for an extended period of time is gross mismanagement. *Id.* § 1112(b)(4)(B) & (b)(4)(C). FMBHC, operating through Mr. Butt, admits to making unauthorized use of cash collateral—and the Court finds that unauthorized use has been substantially harmful to Access Point. *Id.* § 1112(b)(4)(D). The Court finds that FMBHC has repeatedly failed to comply with Orders of the Court in this case. *Id.* § 1112(b)(4)(E). And, despite Mr. Joyce's assertion to the contrary, the Court finds that FMBHC has failed to timely provide information requested by the UST. *Id.* § 1112(b)(4)(H).

The record before the Court, including the eye witness testimony of Police Chief VanBrederode and Fire Marshal Tytler (concerning the threat that the condition of the property and the acts of Mr. Butt pose to public safety), demonstrates multiple bases upon which the Court can (and does) find cause to convert or dismiss under 11 U.S.C. § 1112(b)(1). The Court finds that there exists no reasonable justification for the many omissions and bad acts of FMBHC. Cause to convert or dismiss has been demonstrated under 11 U.S.C. §§ 1112(b)(1), (b)(4)(A)-(E) and (b)(4)(H).

**B.     Dismissal Serves the Best Interests of Creditors**

The decision of whether to convert or dismiss this Chapter 11 case turns on which remedy will serve the best interests of creditors and the estate. Here, dismissal best serves those interests. FMBHC's bankruptcy case was filed for the sole purpose of stopping the foreclosure action against the hotel property. FMBHC has no significant unsecured debt—the unsecured debt is approximately 2% of the total debt in this case. This case is a two-party dispute between FMBHC and Access Point. FMBHC's efforts here appear to be nothing more than a litigation tactic to prevent Access Point from exercising its rights as a secured creditor under the loan

11

agreements.  The state court has already appointed a Receiver to take possession of the property. In the Court's view, a third-party Receiver *must* take immediate control of this property, immediately assess the condition of the hotel, and if there exists a threat to the health and safety of the public, shut the hotel down—until adequate measures are taken to ensure the health and safety of the public.

The extra layer of relief sought by Access Point—dismissal with a bar to refiling for one year—goes a little too far.  Access Point should be allowed to pursue its rights under New York State law.  Accordingly, the Court finds that dismissal of this case serves the best interest of creditors and is most likely to protect the public from harm.  However, the three Chapter 11 case filings by FMBHC in less than two months convince the Court that some bar to refiling is necessary to allow the state court action to go forward, unimpeded.  It will also allow a disinterested third-party Receiver to take control of the hotel and make a reasoned assessment of whether this hotel should remain in operation in its present condition.  In the exercise of its discretion, given the very troubling facts surrounding this case (and its two predecessors), the Court finds it necessary and appropriate to bar FMBHC from filing a Chapter 11 case for a period of 180 days from the closure of this case, under 11 U.S.C. § 105(a).  This bar is intended to apply nationwide, and is limited to Chapter 11 cases.

## IV.

## CONCLUSION

The Court finds, in the exercise of its discretion, that dismissal of this case is in the best interests of creditors, the estate and the public.  The motion of Access Point is **GRANTED** under 11 U.S.C. 11 U.S.C. §§ 1112(b)(1), (b)(4)(A)-(E) and (b)(4)(H).  The case is **DISMISSED** under

11 U.S.C. § 1112(b)(1). Access Point's request for stay relief is **MOOT**. The request of Access Point for a dismissal with a bar to refiling is **GRANTED**. FMBHC is prohibited from filing a Chapter 11 case in any jurisdiction within the United States **for a period of 180 days** from the date this case is closed, under 11 U.S.C. § 105(a). The 180-day bar to the Debtor filing a Chapter 11 petition is intended to be nationwide in its application and extends to any person or entity to whom the Debtor transfers or attempts to transfer the real property at issue in this case.

**IT IS SO ORDERED.**

DATED: May 3, 2019 _____/s/_____
    Rochester, New York  HON. PAUL R. WARREN
  United States Bankruptcy Judge