UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

    F.M. BUTT HOTEL CORP.

                 Debtor.

CHAPTER 11

CASE NO. 19-20310

JUDGE PAUL R. WARREN

**MEMORANDUM OF LAW IN SUPPORT
OF SECURED CREDITOR ACCESS POINT FINANCIAL, LLC'S
MOTION FOR TEMPORARY RESTRAINING ORDER AND FILING BAR**

NOW COMES Secured Creditor Access Point Financial, LLC, (f/k/a Access Point Financial, Inc.) ("**Access Point**"), through its undersigned counsel, seeking to re-open the above-captioned proceeding (the "**Bankruptcy Case**"), temporarily restrain the Debtor, F.M. Butt Hotel Corp. ("**Butt Hotel**") and its principal, Naeem Butt ("**Mr. Butt**") from filing a bankruptcy petition in any jurisdiction within the United States, and to reinstate the filing bar previously imposed by this Court in the Bankruptcy Case for an additional 180 days (*see* ECF Doc. No. 42). In support of this Motion, Access Point states as follows:

**PRELIMINARY STATEMENT**

This Court is familiar with Debtor and has already once determined that Debtor's and Mr. Butt's "many omissions and bad acts" constituted good cause to dismiss the Bankruptcy Case (Debtor's third in a whirlwind of serial filings) and impose a 180-day filing bar, in the exercise of its discretion pursuant to 11 U.S.C. § 105(a), so that Access Point could pursue its rights in a State court foreclosure action (the "**Foreclosure Action**"). The Court recognized that Debtor and Mr. Butt sought bankruptcy protection as "nothing more than a litigation tactic to prevent Access Point from exercising its rights as a secured creditor" to foreclose on its lien on a hotel

located at 911 Brooks Avenue, Rochester, New York (the "**Hotel**"). As such, the Court imposed a 180-day filing bar because it was "necessary to allow the state court action to go forward" and to allow the State court appointed Receiver to take control of the Hotel, which Debtor and Mr. Butt had allowed to decline to a condition constituting "an immediate threat to public health and safety."

The Court's filing bar has expired, yet the circumstances on the ground have hardly changed. Debtor and Mr. Butt continue to interfere with Access Point and the Receiver, as evidenced by a series of orders from the State court holding Mr. Butt in contempt for interfering with the Receiver's operation and management of the Hotel, and Access Point has recently filed a motion seeking to hold Mr. Butt in contempt for a third time for his obstreperous conduct. Access Point remains Debtor's only secured creditor, while neither Debtor nor Mr. Butt has come forward with any sort of financing or source of income to resolve the debt owed to Access Point. Indeed, Access Point secured a default judgment against Debtor, entered June 19, 2019, and on December 17, 2019, the State court entered a Judgment of Foreclosure and Sale. The foreclosure sale is scheduled for January 21, 2020.

Faced with the imminent foreclosure sale, Mr. Butt, on behalf of Debtor, has announced his intention to again file a bankruptcy petition solely for the purpose of thwarting the foreclosure sale. In a series of voicemail messages Mr. Butt left for Access Point's counsel, Barry M. Kazan, Esq., Mr. Butt admitted that he would seek the protection of the bankruptcy court specifically to disrupt the foreclosure sale. Faced with this admission that Debtor and Mr. Butt would pursue a clear bad-faith filing, Access Point now requests that this Court intervene and extend the filing bar previously entered in order to protect Access Point's rights

## PREDICATES FOR RELIEF

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The legal predicate for relief sought herein is 11 U.S.C. § 105(a).

## FACTUAL BACKGROUND

Access Point incorporates the facts as determined by this Court in its Decision and Order entered May 3, 2019 (the "**Dismissal and Bar Order**"). A true and correct copy of the Dismissal and Bar Order is available at ECF Doc. No. 42 and is attached as Exhibit A to the Declaration of Barry M. Kazan, Esq. ("Kazan Decl."). As such, Access Point sets forth here the facts that have developed since the Dismissal and Bar Order.

**1. Debtor and Mr. Butt Repeatedly Violated the State Court's Orders**

On May 7, 2019, Access Point moved by order to show cause for an order punishing Debtor and Mr. Butt for contempt of the State court order appointing the Receiver. Kazan Decl. ¶ 11. Access Point's application detailed Mr. Butt's refusal to turn over access codes, keys, documents, and other records of the Hotel to the Receiver. *Id.* In an order entered May 30, 2019, the State court found Debtor and Mr. Butt in contempt and directed Mr. Butt to promptly turn over all items necessary for the Receiver to take over and begin operations of the Hotel. *Id.* ¶ 12. Mr. Butt ostensibly complied, and the Receiver took over the Hotel in early June. *Id.* ¶ 13.

Between June and September 2019, however, Mr. Butt continued to interfere with the Receiver's operation of the Hotel. *Id.* ¶ 14. Among other things, Mr. Butt physically and verbally accosted the Receiver's employees, accessed various areas of the Hotel without authorization, continued to invite guests to the Hotel and collect deposits, and refused to provide critical documents and utility bills to the Receiver. *Id.* ¶ 15.

Moreover, the deplorable state of the property that this Court recognized in the Dismissal and Bar Order continued and Mr. Butt took steps to thwart the Receiver's efforts to address it. First, the Gates Town Fire Marshall determined in late May that the property was not safe for occupancy and posted the property with "No Occupancy" signs. *Id.* ¶ 17. However, on or around July 3, 2019, the Receiver's employees discovered that Mr. Butt had removed all of the "No Occupancy" signs. *Id.* Second, the Receiver sought Mr. Butt 's removal from occupancy of the Hotel by delivering a Notice to Vacate; Mr. Butt ignored this. *Id.* ¶ 18. Further, Mr. Butt has repeatedly attempted to hire individuals to do repair work at the Hotel, even though this is solely within the Receiver's authority and the Receiver has already hired workers to correct the unfortunate situation at the Hotel – which Access Point has chosen to pay for in an attempt to preserve what value there is left in the property. *Id.* ¶ 19.

For these reasons, Access Point again filed a motion seeking to punish Mr. Butt for contempt. *Id.* ¶ 14. The State court agreed and entered another order punishing Mr. Butt for contempt on October 31, 2019. *Id.* ¶ 20. In that order, the State court directed Mr. Butt to pay a fine of $250.00 to Access Point and to cease and desist from operating the Hotel and interfering with the Receiver. *Id.*

Since that Order, Access Point and the Receiver have worked to have Mr. Butt removed from the Hotel through summary eviction proceedings. *Id.* ¶ 21. At this point, there is no gas service to the Hotel, and the Fire Marshal maintains that the Hotel is totally unfit for occupancy. *Id.* At the same time, local authorities have taken action against Mr. Butt for his failure to obey the order to vacate. *Id.*

More recently, Access Point learned that Mr. Butt, despite the State court's clear orders, has engaged a hotel management company and purportedly entered into a franchise license

4

agreement for the Hotel. *Id.* ¶ 22. Both of these violate the State court orders and Access Point has filed yet another motion to punish Mr. Butt for his contempt. *Id.* ¶ 20

As the foregoing demonstrates, the Debtor and Mr. Butt's conduct has not changed since the Dismissal and Bar Order was entered. Mr. Butt continues to engage in tactics solely designed to thwart Access Point's exercise of its rights.

**2. Access Point Secures the Judgment of Foreclosure and Sale**

Debtor failed to answer or appear in the Foreclosure Action. *Id.* ¶ 7. As such, the State court entered a default judgment on June 19, 2019. *Id.* The State court then entered a Judgment of Foreclosure and Sale on December 17, 2019 (the "**Foreclosure Judgment**"), a copy of which is attached to the Kazan Declaration as Exhibit B. *Id.* ¶ 8 *Ex. B. The Foreclosure Judgment confirmed the Referee's computation that the amounted owed to Access Point as of November 4, 2019 is $7,778,265.60, together with interest that has accrued and will continue to accrue at the *per diem* rate of $2,286.11. *Id.* Ex. B. The Foreclosure Judgment further directs the Referee to publish a Notice of Sale, to sell the property, and to distribute the proceeds. *Id*. Access Point has worked with the Referee and a Notice of Sale has been published in The Daily Register, a newspaper in the Rochester area, advertising the foreclosure sale scheduled for January 21, 2020. *Id.* ¶ 9.

**3. Mr. Butt Threatens to File Bankruptcy to Thwart the Foreclosure Sale**

On January 8, 2020, Access Point's counsel received a series of telephone calls from Mr. Butt. *Id.* ¶ 24. Counsel did not answer those calls and, as a result, Mr. Butt left a series of voicemail messages. *Id*. In one voicemail, Mr. Butt admits that he plans to "file the Chapter 11 maybe an hour before" the foreclosure sale and that "there will be no sale." *Id.* ¶ 26. Mr. Butt further explains that "there will be no foreclosure sale," "this will be dragged on" and "no one is

5

going to stop me from me [sic] having the hotel." *Id.* ¶ 27. Mr. Butt concludes stating "regarding the foreclosure auction sale, that's really a deal. It's not gonna happen." *Id.*

Mr. Butt's voicemails also claim that he has obtained some financing for a settlement with Access Point. *Id.* ¶ 28. Mr. Butt proposed settling the debt owed to Access Point with a payment of $3,000,000, less than half the total debt owed to Access Point. *Id.* Despite these claims, Mr. Butt has provided Access Point no proof of any funding or any income whatsoever. *Id.* Moreover, when Mr. Butt improperly entered into the franchise license agreement, he was required to make a cash deposit of $35,000.00; Access Point has confirmed that he never paid the deposit. *Id.* ¶ 23.

In response to Mr. Butt's voicemails, counsel for Access Point sent an email to David Stern, Esq. *Id.* ¶ 29 & Ex. C. Mr. Stern had previously represented Mr. Butt in proceedings before Gates Town Court. *Id.* Access Point's counsel informed Mr. Stern about the voicemails and stated that he would not speak with Mr. Butt without counsel. *Id.* Mr. Stern did not respond. *Id.*

At this juncture, Access Point is Debtor's only secured creditor and Mr. Butt has demonstrated that he has no concern for Access Point's rights. He has also demonstrated that he has little concern for the Bankruptcy Code and this Court, admitting he is prepared to file a petition solely to interfere with the foreclosure sale. This Court should extend the filing bar an additional 180 days.

## **LEGAL ARGUMENT**

This Court previously entered a filing bar pursuant to 11 U.S.C. § 105(a) in order to allow Access Point to fully protect and exercise its rights in the Foreclosure Action. Access Point has diligently pursued those rights and is now prepared to conclude a foreclosure sale but

requires more time to do so. Faced with that imminent sale, Mr. Butt has declared his intent to file, in bad-faith, another bankruptcy petition to prevent the foreclosure sale. For the same reasons the Court previously entered the filing bar, it should reopen this proceeding and impose another filing bar.

## I. THE COURT SHOULD REOPEN THIS PROCEEDING

A bankruptcy court has discretion pursuant to 11 U.S.C. § 350(b) to reopen a previously closed proceeding. 11 U.S.C. § 350; *D.A. Elia Constr. Corp. v. Damon Morey, LLP*, No. 11-cv-637-A, 2013 U.S. Dist. LEXIS 45931, at *28-29 (W.D.N.Y. Mar. 29). It is well-settled that "[e]ven though the bankruptcy case may be dismissed or closed, the bankruptcy court retains jurisdiction to interpret and enforce its orders." *D.A. Elia*, 2013 U.S. Dist. LEXIS 45931, at *28-29 (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)); *see also In re Parklex Assocs.*, 435 B.R. 195, 208 (S.D.N.Y. 2010).

Here, it is appropriate for the Court to re-open this proceeding in order to ensure that the purpose of the Dismissal and Bar Order is carried out. Mr. Butt's threat to file a new petition, plainly in bad faith (*see*, Point II, *supra*), is the sort of "end-run" around the Dismissal and Bar Order that this Court believed warranted imposition of the filing bar. Kazan Decl. Ex. A at 2.

## II. THE COURT SHOULD EXTEND THE PREVIOUS FILING BAR

Mr. Butt's voicemails demonstrate that he intends to file a new Chapter 11 petition in order to again gain the protection of the automatic stay and prevent Access Point's foreclosure sale pursuant to the Foreclosure Judgment. *See id.* ¶¶ 26-27. This represents a quintessential bad-faith filing because Mr. Butt has shown himself incapable of satisfying the requirements of a debtor seeking protection of the Bankruptcy Code.

7

Courts have uniformly held that an implicit prerequisite to filing a bankruptcy petition is "good faith on the part of the debtor, the absence of which may constitute cause for dismissal." *See Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (citing *In re Winshall Settlor's Tr.*, 758 F.2d 1136, 1137 (6th Cir. 1985). This "implicit" good faith requirement is required to prevent fraud or abuse of the bankruptcy process. *See In re Shar*, 253 B.R. 621, 629 (Bankr. D.N.J. 1999) (internal citations omitted). The Second Circuit has noted that "[s]erial filings are a badge of faith." *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 332 (2d Cir. 1999) (quoting *In re Felberman*, 196 B.R. 678, 681 (Bankr. S.D.N.Y. 1995)

Serial filings "calculated solely to reap the benefits of the automatic stay and frustrate or delay enforcement of a secured creditor's foreclosure rights are an abuse of the system." *In re Casse,* 219 B.R. 657, 661 (Bankr. E.D.N.Y. 1998). "Merely dismissing cases initiated in bad faith allows a serial filer the opportunity to file yet again, furthering purposes other than the legitimate aims and objectives." *Id.* The Second Circuit has concluded that dismissal with prejudice is appropriate where a debtor files a series of petitions strategically timed to thwart a secured creditor from foreclosing on its collateral. *See Casse*, 198 F.3d at 341-42; *see also Colonial Auto Ctr. v. Tomlin (In re Tomlin),* 105 F.3d 933, 941-942 (4th Cir. 1997) (affirming the dismissal of a serial bankruptcy filer's sixth bankruptcy case with prejudice to refiling for 180 days); *Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz),* 341 B.R. 371, 386 (B.A.P. 1st Cir. 2006) (affirming the dismissal of a serial bankruptcy filer's fourth Chapter 13 case with prejudice to refiling for 180 days).

This Court has already once concluded that Debtor and Mr. Butt's serial filing was an abuse of the bankruptcy system. *See* Kazan Decl. Ex. A. at 12 (stating "the three Chapter 11

8

case filings by [Debtor] in less than two months convince the Court that some bar to re-filing is necessary"). In reaching this conclusion, the Court recognized the truth of the situation:

> "[Debtor's] bankruptcy case was filed for the sole purpose of stopping the foreclosure action against the hotel property. [Debtor] has no significant unsecured debt – the unsecured debt is approximately 2% of the total debt in this case. This case is a two-party dispute between [Debtor] and Access Point. [Debtor's] efforts here appear to be nothing more than a litigation tactic to prevent Access Point from exercising its rights as a secured creditor."

*Id.* Ex. A at 11.

The circumstances have not changed except that Access Point has pursued its rights and obtained the Foreclosure Judgment. *Id.* ¶ 8 & Ex. B. Debtor still has no significant unsecured debt and Access Point remains Debtor's only secured creditor. *Id.* ¶ 30. And Debtor has not obtained any financing or other funds that might otherwise be used to resolve its debt to Access Point. *Id.* ¶ 28. The situation remains a two-party dispute. *Id.* ¶ 30.

Moreover, Mr. Butt has been clear: he will not allow the foreclosure sale to proceed. *Id.* 26-27. To accomplish this, he intends to resort to the same "litigation tactic" and file yet another bankruptcy petition. *Id.* He has admitted that "there will be no sale. We'll file the Chapter 11 maybe an hour before." *Id.* There is simply no other basis for a Chapter 11 filing.

To prevent this obvious abuse, the Court should again exercise its discretion under Section 105(a) and extend the previously entered filing bar by an additional 180 days. There is no impediment to the Court taking this action, as the Second Circuit has recognized that a bar in excess of 180 days may be imposed in appropriate circumstances. *See Casse*, 198 F.3d at 339 (Second Circuit held that bankruptcy courts may impose indefinite bar to refiling in order to allow creditor to complete collection efforts); *see also In re Leavitt*, 209 B.R. 935, 941-943 (9th Cir. B.A.P. 1997) (Ninth Circuit B.A.P. concluded that upon finding of cause for dismissal with

9

Case 2-19-20310-PRW, Doc 55-1, Filed 01/13/20, Entered 01/13/20 18:46:18, Description: Memorandum of Law, Page 9 of 10

prejudice future filings could be barred indefinitely), *aff'd* 171 F.3d 1219, 1223 (9th Cir. 1999). Here, given Mr. Butt's admissions, it is appropriate to extend the filing bar previously imposed.

Further, and because the foreclosure sale is scheduled for January 21, 2020, it is necessary that the court temporarily restrain Debtor and Mr. Butt from filing any petition for at least 14 days or until the Court can resolve this application.

## CONCLUSION

**WHEREFORE**, Access Point respectfully requests that the Court enter an Order (i) reopening this proceeding and (ii) barring Debtor from filing a bankruptcy petition in any jurisdiction within the United States for 180 days.

Dated: January 13, 2020
      New York, New York

                          THOMPSON HINE LLP

                          By:  /s/Barry M. Kazan
                               Barry M. Kazan
                               335 Madison Avenue
                               New York, New York 10017
                               Telephone: (212) 908-3921
                               Barry.Kazan@ThompsonHine.com

                               *Attorneys for Secured Creditor Access Point*
                               *Financial, LLC, formerly known as Access*
                               *Point Financial, Inc.*