UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

    F.M. BUTT HOTEL CORP.

             Debtor.

CHAPTER 11

CASE NO. 19-20310

JUDGE PAUL R. WARREN

## <u>DECLARATION OF BARRY M. KAZAN, ESQ.</u>

I, Barry M. Kazan, Esq., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

1.      I am an attorney at law and am a member of the firm of Thompson Hine, LLP, the attorneys of record for Secured Creditor Access Point Financial, LLC ("**<u>Access Point</u>**"), and I am fully familiar with the facts, circumstances and proceedings herein.

2.      I submit this Declaration in support of Access Point's request, brought by Order to Show Cause, to reopen this proceeding, temporarily restrain Debtor F.M. Butt Hotels Corp. ("**<u>Butt Hotels</u>**") and its principal, Naeem Butt ("**<u>Mr. Butt</u>**") from filing a bankruptcy petition in any jurisdiction within the United States, and to reinstate the filing bar previously imposed by this Court in the Bankruptcy Case for an additional 180 days.

3.      On May 3, 2019, this Court entered a Decision and Order dismissing Debtor's Chapter 11 bankruptcy petition and imposing, pursuant to 11 U.S.C. § 105(a), a 180-day bar from filing a bankruptcy petition in any jurisdiction within the United States (the "**<u>Dismissal and Bar Order</u>**"). A true and correct copy of the Dismissal and Bar Order is attached hereto as <u>Exhibit A</u>.

4.      The Court dismissed the proceeding for cause because:  (i) the "substantial decline in the condition of the estate property – rendering it an immediate threat to public health and safety" (Ex. A. at 10); (ii) there was no "reasonable likelihood of rehabilitation given the nearly $7.0 million dollar secured debt" owed to Access Point (*id.*); (iii) Debtor, through Mr. Butt, operated the Hotel without mandatory liability, casualty, workers' compensation and disability insurance and made unauthorized use of cash collateral (*id.* at 11); (iv) Debtor failed to comply with Orders of the Court and failed to timely provide information to the Trustee (*id.*); and (v) dismissal was in the best interest of Creditors because Access Point is Debtor's sole secured creditor and Debtor "has no significant unsecured debt" (*id.*).

5.      The Court imposed a 180-day filing bar because "the three Chapter 11 case filings by [Debtor] in less than two months convince the Court that some bar to refiling is necessary to allow the state court action to go forward, unimpeded." *Id.* at 12.

**The State Court Foreclosure Proceedings**

6.      Since the Dismissal and Bar Order was entered, Access Point has pursued its rights in a State court foreclosure action, *Access Point Financial, LLC v. F.M. Butt Hotels Corp.*, Index No. E2019001885 (Sup. Ct. Monroe Cnty. 2019) (the "**Foreclosure Action**").

7.      On June 19, 2019, the State court entered an Order of Default Judgment and Order of Reference.  NYSCEF Doc. No. 80.  The court appointed a referee to compute the amounts due to Access Point and to determine whether the property could be sold in parcels.  *See id.*

8.      On December 17, 2019, the State court entered a Judgment of Foreclosure and Sale, directing that the Referee publish a Notice of Sale and conduct a foreclosure sale consistent

with state law (the "**Foreclosure Judgment**").  NYSCEF Doc. No. 107.  In the Foreclosure

Judgment, the State court confirmed the Referee's computation that the amount owed to Access

Point as of November 4, 2019 is $7,778,265.60, together with interest that has accrued and will

continue to accrue at the *per diem* rate of $2,286.11.  *Id.*  A true and correct copy of the

Foreclosure Judgment is attached here as <u>Exhibit B</u>.

9.      A Notice of Sale has been published in The Daily Register, a local newspaper in

the Rochester area, consistent with the Foreclosure Judgment.  The foreclosure sale is scheduled

to occur on January 21, 2020.

### Debtor and Mr. Butt's Ongoing Disobedience of State Court Orders

10.      In the Foreclosure Action, Debtor and Mr. Butt have, on multiple occasions,

failed to comply with the State court's orders and have been held in contempt on two occasions.

11.      First, on May 7, 2019, Access Point moved by order to show cause for an order

punishing Debtor and Mr. Butt for contempt of the State court order appointing the Receiver.

*See* NYSCEF Doc. Nos. 31-41.  Access Point's application detailed Mr. Butt's refusal to turn

over access codes, keys, documents, and other records of the Hotel to the Receiver.

12.      In an order entered May 30, 2019, the State court found Debtor and Mr. Butt in

contempt and directed Mr. Butt to promptly turn over all items necessary for the Receiver to take

over and begin operations of the Hotel.  *See* NYSCEF Doc. No. 64.

13.      Mr. Butt ostensibly complied, and the Receiver took over the Hotel in early June.

14.      Between June and September 2019, however, Mr. Butt continued to interfere with

the Receiver's operation of the Hotel.  The underlying facts of this continued interference are set

3

forth at length in Access Point's Cross-Motion to punish Mr. Butt for contempt and an Affidavit of Timothy P. Foster, the Receiver, filed in the State court action. *See* NYSCEF Doc. Nos. 85-91.

15.     Among other things, Mr. Butt physically and verbally accosted the Receiver's employees, accessed various areas of the Hotel without authorization, continued to invite guests to the Hotel and collect deposits, and refused to provide critical documents and utility bills to the Receiver. *See* NYSCEF Doc. No. 85.

16.     Moreover, the deplorable state of the property that this Court recognized in the Dismissal and Bar Order, continued and Mr. Butt took steps to thwart the Receiver's efforts to address it. *See id.*

17.     The Gates Town Fire Marshall concluded in late May that the Hotel was unsafe for occupancy and posted the property with "No Occupancy" signs. It was then discovered, on July 3, 2019, that Mr. Butt had taken down all of the "No Occupancy" signs. *See id.*

18.     The Receiver also sought Mr. Butt's removal from the Hotel by Notice to Vacate, which Mr. Butt ignored. *See id.*

19.     Mr. Butt has repeatedly attempted to hire individuals to do repair work at the Hotel, even though this is solely within the Receiver's authority and the Receiver has already hired workers to correct the unfortunate situation at the Hotel – which Access Point has had to pay for.

20.     The State court entered an order on October 31, 2019 finding that Mr. Butt's conduct again constituted contempt. *See* NYSCEF Doc. No. 97. In that order, the State court

4

directed Mr. Butt to pay a fine of $250.00 to Access Point and to cease and desist from operating the Hotel and interfering with the Receiver. *Id.*

21. Since then, Access Point and the Receiver have worked to have Mr. Butt removed from the Hotel through summary eviction proceedings. At this point, there is no gas service to the Hotel and the Fire Marshal maintains that the Hotel is totally unfit for occupancy. Local authorities have taken action against Mr. Butt for failing to obey the order to vacate the premises.

22. Access Point has also learned that Mr. Butt has engaged a hotel management company and purportedly entered into a franchise license agreement for the Hotel. Both of these violate the State court orders and Access Point has filed yet another motion to punish Mr. Butt for his contempt. *See* NYSCEF Doc. No. 109.

23. In connection with the franchise license agreement, I have been informed that Mr. Butt was required to pay a deposit of $35,000.00. He has not paid that deposit (although he has indicated it is only $15,000).

**Mr. Butt Threatens to File a New Chapter 11 Petition to Stop the Foreclosure Sale**

24. On January 8, 2020, I received several telephone calls from Mr. Butt. I did not answer the calls and Mr. Butt left several voicemails.

25. I have maintained the audio from these voicemails and am prepared to make those available to the Court. I have excerpted certain relevant portions here that suggest that Mr. Butt intends to file a bankruptcy petition solely to frustrate the foreclosure process.

26. In the first voicemail, Mr. Butt stated as follows:

5

"Hi Mr. Kazan I think you called me back and we got disconnected or you hung up. I'd really appreciate it that you called but I really want to talk to you. Call me back so that we can take care of this before wasting any more of your time. ***Again, as you know the Bank is trying for the foreclosure sale on the 21st of January so just you know I'm having a friendly discussion with you, Mr. Kazan, that is not gonna happen. Ok. Period. And the thing is I have done all things the attorneys have done preparation everything, I'm ready, if this is not…. If you don't take care of this settlement you know, please be prepared not even buy an air ticket for Rochester because there will be no sale. We'll file the Chapter 11 maybe an hour before.*** But it's not going to be like last year what I did because I was not even taking it seriously and I told …..I apologize…but now I'm truly prepared. There is no sense of doing it. It's going to be more wasted time . . . . I have the title and I will not let the sale happen . . . Put your head together because it's going to be waste of time if I filed the bankruptcy this will be dragged on and I will….I did send you some information for you maybe you are not aware of that….an email and read it and my plan is a very, very solid plan and I'm investing spending money because this is my life investment in this hotel and I will never let anyone take it away. So you're not gonna get the deed." (emphasis added).

27.     In a second voicemail, Mr. Butt stated:

> There will be no foreclosure sale. So that's a waste of time and another silly move. Why not you get paid and leave my hotel. Let me rehab my hotel and even if I do the bankruptcy. I will rehab it. Because the receiver will be out same day and I will get the franchise….I have the money. I'm going to rehab it. The business plan is great and in the end after waiting maybe two years still, probably you're not probably going to get me…couple of million. …because you know the bankruptcy protects the unsecured creditors. I learned a lot. My attorneys have spent time now and you can feel it in my talk…the impression. Trust me . . . if I had to file bankruptcy, no one is going to stop me from me rehabbing the hotel and I will rehab it and this will be dragged on. ***This not the bankruptcy case I did back in April of 2019. That was a joke and I admit it. I didn't take it seriously and I thought …but now I know I have done all the homework and I'm super confident that there is no sale by the way, so don't, please don't waste your time . . . But, regarding the foreclosure auction sale, that's really a deal. It's not gonna happen.*** (emphasis added)

6

28.     In the voicemails, Mr. Butt also claimed to have obtained some funding to settle the debt owed to Access Point, but he has not provided any proof of such funding to Access Point. Moreover, the amount that Mr. Butt offered ($3,000,000) to settle the debt is less than half of the amount of the debt owed to Access Point so there is no current reason to believe that Butt Hotel can fund the bankruptcy proceedings or propose a feasible plan of reorganization.

29.     In response to these voicemails, I sent an email to David Stern, Esq., who I know has represented Mr. Butt in connection with proceedings in the Gates Town Court, and informed Mr. Stern that I would not speak to Mr. Butt without counsel. A true and correct copy of my email to Mr. Stern is attached here as Exhibit B. Mr. Stern has not responded to my e-mail.

30.     The present facts and circumstances are no different than when the Court entered the Dismissal and Bar Order, except that Access Point has obtained the Foreclosure Judgment and is prepared to go forward with a foreclosure sale. Access Point is Debtor's only secured creditor and Debtor's unsecured debt has not changed.

31.     Because Mr. Butt has clearly explained his intent to file, in bad-faith, a Chapter 11 petition solely for the purpose of disrupting the foreclosure sale scheduled for January 21, 2020, Access Point seeks relief from this Court by order to show cause.

32.     Further, because the foreclosure sale is imminent and any bankruptcy petition filed by Debtor could potentially interfere with that sale, Access Point requests that this court temporarily restrain and enjoin Debtor and Mr. Butt from filing any bankruptcy petition in any jurisdiction in the United States for at least 14 days or until this Court can resolve Access Point's application.

7

WHEREFORE, Access Point respectfully requests that this Court sign and enter the accompanying Order to Show Cause, reopening this proceeding and temporarily restraining Debtor and Mr. Butt from filing any bankruptcy petition in any jurisdiction in the United States for at least 14 days or until this Court can resolve Access Point's application, and further issue an order re-instating the 180-day filing bar.

Dated: January 13, 2020
       New York, New York

                                        /s/Barry M. Kazan
                                        Barry M. Kazan

8

Case 2-19-20310-PRW,   Doc 55-2,   Filed 01/13/20,   Entered 01/13/20 18:46:18,
Description:  Declaration of Barry M. Kazan, Page 8 of 36

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

        F.M. Butt Hotels, Corp.,                Bankruptcy Case No. 19-20310-PRW
                                       Chapter 11
                Debtor.

_____

# DECISION AND ORDER
## GRANTING MOTION TO DISMISS FOR CAUSE
## AND BARRING DEBTOR FROM FILING A CHAPTER 11
## CASE FOR 180 DAYS

PAUL R. WARREN, U.S.B.J.

This Chapter 11 case was filed April 5, 2019. It is the third Chapter 11 case filed by F.M.

Butt Hotels, Corp. since March 5, 2019, the previous two cases having been dismissed by the

Court. (*See* Case Nos. 19-20222-PRW & 19-20234-PRW). This case and its predecessors were

filed solely to stop a mortgage foreclosure action brought by Access Point Financial, LLC—the

holder of a first-priority mortgage lien against FMBHC's hotel property.

Access Point has moved for an order terminating the automatic stay or, alternatively, for

an order dismissing this case. (ECF Nos. 19, 39). The motion was heard on May 2, 2019. In

addition to hearing from counsel to Access Point and FMBHC, the Court heard from James

VanBrederode, Police Chief for the Town of Gates, and David Tytler, Fire Marshal for the Town

of Gates regarding their personal observations, in their professional capacities, of the physical

condition of the hotel and the public health and safety threats posed by the dilapidated conditions

at the hotel.

The evidence received by the court demonstrates that cause exists to convert or dismiss this case under 11 U.S.C. §§ 1112(b)(1), (b)(4)(A), (b)(4)(B), (b)(4)(C), (b)(4)(D), (b)(4)(E) and (b)(4)(H).  The exceptions under § 1112(b)(1) and (b)(2) do not apply in this case.  In the exercise of its discretion, the Court finds that dismissal is in the best interests of creditors, the estate, and necessary to protect the health and safety of the public.  The motion to dismiss of Access Point is **GRANTED**.  As a consequence, the portion of the motion requesting stay relief is rendered **MOOT**.  The Debtor is **BARRED** from filing a Chapter 11 case for a period of 180 days from the date this case is closed, in the exercise of the Court's discretion under 11 U.S.C. § 105(a), to afford Access Point time to foreclose its mortgage lien without further interference by the Debtor.  The 180-day bar to the Debtor filing a Chapter 11 petition is intended to be nationwide in its application and extends to any person or entity to whom the Debtor transfers or attempts to transfer the real property at issue in this case, to ensure that the Debtor cannot end-run this decision.

# I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

Case 2:19-20310-PRW    Doc 55    Filed 03/03/20    Entered 03/03/20 17:04:58,
Description: Declaration of Barry M. Kazan    Page 11 of 36

## II.

## FACTS[1]

F.M. Butt Hotels, Corp. owns and operates a hotel located at 911 Brooks Avenue in the Town of Gates. (ECF No. 1 at 1). Some longtime Rochestarians may fondly remember that same location—years ago—as being the site of the Holiday Inn Airport. More recently, and at the time the hotel was purchased by FMBHC, the hotel was known as the Ramada Plaza Rochester Airport. A detailed description of the lending transaction between FMBHC and Access Point is set out in the creditor's motion. (ECF No. 19 at 4-9 & Exhibits A-H). For our purposes, it suffices to say that, in May 2017, Access Point loaned FMBHC $4,280,000 to purchase the hotel real property, secured by a mortgage, assignment of rents, security agreement and fixture filing. (*Id.* at 4-5 & Exhibits A-E). Access Point loaned an additional $1,600,000 to FMBHC to be used by FMBHC to purchase new furniture, fixtures and equipment for the hotel, secured by a first priority lien on all furniture, fixtures and equipment. (*Id.* at 5-6 & Exhibits F-H). The total combined principal amount of those loans was $5,880,000.

Almost exactly one year later, FMBHC defaulted on its payment obligation to Access Point. (ECF No. 19, Ex. I). After FMBHC failed to respond to a notice of default, Access Point accelerated the indebtedness. (*Id.* at Ex. J). At the end of February 2019, Access Point filed an action against FMBHC in the Monroe County Supreme Court to foreclose its mortgage. (*Id.* at Ex. M). The State Supreme Court issued an Order appointing a Receiver to take possession of the hotel. (*Id.*). On March 15, 2019, when the court-appointed Receiver attempted to take control of the hotel, the principal of FMBHC asserted (untruthfully) that the hotel had filed a

---

[1]      To get a full flavor of the factual background in this case, a quick reading of this Court's earlier decision in Mr. Butt's personal Chapter 11 case may be helpful. *See In re Butt*, Case No. 19-20076-PRW, 2019 Bankr. LEXIS 1032 (Bankr. W.D.N.Y. Apr. 4, 2019) (Warren, J.).

Case 2-19-20311-PRW, Doc 55, Filed 01/03/20, Entered 01/03/20 17:04:58,
Description: Declaration of Barry M. Kazan, Page 12 of 36

Chapter 11 petition.  (*Id.* at 8).  So, the Receiver left the premises.  (*Id.*).  Mr. Butt later that morning filed a Chapter 11 petition on behalf of FMBHC, as a *pro se* corporate debtor.  (*See* F M Butt Hotels Corp, Case No. 19-20222-PRW).  The Court promptly dismissed that petition *sua sponte*.  (Case No. 19-20222, ECF No. 2).

A few days later, on March 18, 2019, the Received again attempted to take possession of the hotel property.  (ECF No. 19 at 8).  FMBHC filed a second Chapter 11 petition, this time through James M. Joyce, Esq., as its attorney.  (*See* F. M. Butt Hotel Corp., Case No. 19-20234-PRW.)  Because the petition was bare bones, without any required statements or schedules, the Court immediately entered a case management Order directing FMBHC to file all required statements and schedules by April 1, 2019 or face dismissal, as required by the Federal Rules of Bankruptcy Procedure.  (Case No. 19-20234, ECF No. 4).  Both Access Point and the United States Trustee quickly filed motions to dismiss.  (Case No. 19-20234, ECF Nos. 16, 23).  Before those motions could be heard, on April 4, 2019, the Court entered an Order dismissing the case *sua sponte* because FMBHC failed to comply with the Court's case management Order.  (Case No. 19-20234, ECF No. 24).

The next day, FMBHC filed its third Chapter 11 petition, commencing this case, again through James M. Joyce, Esq., as counsel.  (ECF No. 1).  The Court promptly entered case management Orders.  (ECF Nos. 6, 7).  FMBHC has failed to fully comply with those Orders.  FMBHC also failed to retain counsel—more to the point, counsel has not properly sought to be appointed and has ignored the Clerk of the Court's deficiency notice advising him of that fact.  (ECF Nos. 27, 28, 30).

Access Point promptly moved (again) to dismiss this case as a bad faith filing, or in the alternative, for relief from the automatic stay.  (ECF No. 19).  The motion goes into great factual

4

detail and includes numerous citations to points and authorities in support of the motion. Shortly after the Access Point motion was filed, the UST filed a motion to dismiss, but that motion was not scheduled to be heard with the Access Point motion. (ECF Nos. 33, 34). Both motions point to a number of factors justifying dismissal—the most troubling of which was the alleged lack of liability, casualty, workers' compensation and disability insurance. (ECF No. 19 at 16; ECF No. 33 ¶ 11). Recall that FMBHC owns and operates a hotel, presumably visited by members of the public. So, the alleged lack of insurance is an exceedingly concerning situation. FMBHC filed opposition to the Access Point motion, consisting of a page and one-quarter of generalities about the value of the property and the hopes for post-petition financing. (ECF No. 36). No mention was made by FMBHC of the lack of insurance, unauthorized use of cash collateral, or the actual condition of the property in its response. Instead, FMBHC indicated that it had agreed to a post-petition secured financing commitment, without Court approval. (*Id.* ¶ 8 & Ex. B).

The Court held a hearing on the motion on May 2, 2019. During the hearing, Mr. Butt testified on behalf of FMBHC. Based on Mr. Butt's testimony, it is uncontroverted that FMBHC had no insurance from March 19, 2019 through at least April 12, 2019—during which time FMBHC continued to operate the hotel. It is uncontroverted that the restaurant at the hotel was (and is still) closed by order of the Monroe County Department of Public Health because of a significant rodent infestation. It is also uncontroverted that the hotel bar, known as Wheels Up Tavern, was closed by order of the New York State Liquor Authority and the liquor license of FMBHC has been suspended. Both of these events took place while FMBHC was under the protection of this Court, but lawfully done in the exercise of police powers.

Access Point has a lien on all rents and profits generated by operation of the hotel, and it has objected to the use of its cash collateral. (ECF No. 19, Ex. C). At oral argument, counsel to

FMBHC asserted that no cash collateral was being used because the credit card sales accounts had been suspended. However, Mr. Butt interrupted and testified to a very different story; he admitted that the cash collateral of Access Point was being used by FMBHC to pay employee wages, maintenance and repair costs and other expenses. At no time did FMBHC seek the Court's permission to use cash collateral and Access Point did not consent to its use.

To make things worse, FMBHC entered into a loan commitment on April 25, 2019 to obtain a post-petition secured loan. No request was made by FMBHC for authorization to obtain such financing as required by 11 U.S.C. § 364(c). The commitment required the payment of a non-refundable deposit of $15,000 by FMBHC. Mr. Butt admitted that FMBHC obtained a loan for $15,000 from the Butt family. No Court approval for that borrowing was sought by FMBHC and the Court did not approve that borrowing. Further, FMBHC failed to provide the utility provider (RG&E) with adequate assurance of payment that is satisfactory to the utility for the utility service, as required by 11 U.S.C. § 366(c). The 30-day period to do so expires this weekend. As a result, the utility provider will have the right, under 11 U.S.C. § 366(c)(2), to discontinue utility service to the hotel—an exceedingly serious situation for a hotel or any commercial business that entertains members of the public.

All of this is troubling, but it gets much worse. A number of government officials from the Town of Gates attended the hearing, including the Town Supervisor, the Police Chief, the Fire Marshal and a Police Lieutenant. The Court granted the request of Chief VanBrederode and Fire Marshal Tytler to be heard in connection with the motion. Both Chief VanBrederode and Fire Marshal Tytler provided the Court with a detailed description of the physical condition of the hotel, safety and security issues concerning the hotel, levels of occupancy at the hotel, and changes in the physical condition of the hotel in recent years—all based on the personal

6

knowledge of the Police Chief and Fire Marshal acquired from their many official visits and inspections of the hotel. The facts offered by Chief VanBrederode and Fire Marshal Tytler were not refuted by Mr. Butt or counsel to FMBHC in any respect.

The Police Chief and Fire Marshal offered a number of facts showing that the hotel poses a significant risk to public safety. First, the Court was advised that FMBHC failed to keep a daily "guest manifest" as is required by state law. (*See* N.Y. Gen. Bus. § 204). According to Fire Marshal Tytler, a manifest is required so that first responders can immediately determine which specific rooms are occupied and the identity of occupants. The failure to keep such a manifest is punishable as a misdemeanor under state law. Next, because of significant water damage—followed by the growth of black mold—resulting from unrepaired roof damage caused by a storm in early 2018, two entire wings of the hotel were closed by order of the Fire Marshal. In fact, Fire Marshal Tytler testified that the physical condition of these two wings of the hotel are so dangerous, he has ordered firefighters not to enter these areas. The two wings comprise 75% of the 200 rooms at the hotel. Stated differently, 150 of the 200 rooms at the hotel have been ordered "off limits" by the Fire Marshal. Mr. Butt conceded that only 25% of the rooms at the hotel are habitable—and that's probably optimistic. The good news, according to Chief VanBrederode (who patrols the parking lot routinely several times a week) is that there appear to be very few hotel guests based on the absence of cars in the parking areas. Perhaps due to the "deplorable" conditions of the hotel (the Fire Marshal's word), the hotel was deidentified as a "Ramada Inn" in March 2019 by Wyndham Corporation. The loss of identification as part of a national hotel chain most certainly further devalues the hotel property.

And there is much more troubling news. This case was filed on April 5th, a Friday. Mr. Butt testified that one day later, FMBHC hosted a "hip hop party"—the third such "rave" hosted

7

by FMBHC. Previous raves hosted by the hotel brought in 200-300 guests. Mr. Butt testified that because of crowd problems encountered during the previous two raves, he requested assistance with crowd control from the Gates Police Department. Mr. Butt knew that there existed the potential for skirmishes between attendees at the April 6 rave, based on his prior experiences. And Mr. Butt knew more—he knew that the liability and casualty insurance on the FMBHC hotel property had expired on March 19, 2019. Knowing that the hotel lacked any insurance coverage, Mr. Butt allowed the rave to take place on the FMBHC premises on April 6, 2019 (and he presumably continued to rent rooms to guests). According to Chief VanBrederode, while the crowed was disbursing around 1:30 A.M. on April 7, 2019, some fights broke out in the parking lot. At the time, there were 15-20 uniformed police officers on the premises. While Gates Police officers were arresting the combatants, gun shots were fired from a vehicle located in the parking lot on the premises. Fortunately, no one was hit by the bullets. And, all this happened at a hotel unknowingly being operated by Mr. Butt with no liability or casualty insurance.

Police Chief VanBrederode testified that because of the imminent threat to public health and safety, his office (on behalf of the Town of Gates) immediately sought an emergency order from the New York State Liquor Authority suspending FMBHC's liquor license to operate Wheels Up Tavern at the hotel. Finding that "in order to protect the public health, safety and welfare, it is imperative that emergency action be taken against the immediate and continued danger resulting from [FMBHC's] illegal activities and failure to adequately supervise the conduct of the licensed premises," on April 8, 2019 the State of New York issued an "Emergency Summary Order of Suspension." *See* Matter of F. M. Butt Hotels Corp., dba Ramada Plaza Rochester Airport/Wheels Up Tavern, Case Nos. 132851 & 126350 (April 8, 2019

Case 2-19-20310-PRW, Doc 522, Filed 03/03/20, Entered 03/03/20 17:04:58, Description: Declaration of Barry M. Kazan, Page 8 of 17
Case 2-19-20310-PRW, Doc 552, Filed 03/13/20, Entered 03/13/20 17:04:58, Description: Main Document, Page 17 of 36

NYS Liquor Authority). At this moment, the hotel's restaurant remains closed (due to a significant rodent infestation) and its tavern remains closed (due to a series of liquor license violations beginning in June 2018 and culminating with gun play on the premises during the early morning hours on April 7, 2019), further depressing the value of the hotel.

Finally, at oral argument the Court asked counsel to FMBHC about the alleged failure to provide the UST with income and expense reports and federal tax returns. Mr. Joyce assured the Court that copies of FMBHC tax returns were emailed to the UST "two weeks ago." When pressed, Mr. Joyce then indicated that FMBHC provided the UST with its tax returns "in the last case." (Case No. 19-20234). Mr. Joyce assured the Court that was the case. Following the hearing, the Court was advised that FMBHC did not (ever) provide copies of its tax returns to the UST in Case 19-20222, or in case 19-20234, or in this case.[2]

## III.

## DISCUSSION

### A. "Cause" Has Been Demonstrated Under 11 U.S.C. § 1112(b)

This Court has had numerous occasions to consider the appropriateness of conversion or dismissal of a Chapter 11 bankruptcy case under 11 U.S.C. § 1112(b). *In re Butt*, No. 19-20076-PRW, 2019 Bankr. LEXIS 1032 (Bankr. W.D.N.Y. Apr. 4, 2019); *In re Anvil Holdings, LP*, 595 B.R. 622 (Bankr. W.D.N.Y. 2019); *In re 250 Pixley Rd., LLC*, No. 17-20125-PRW, 2018 Bankr. LEXIS 765 (Bankr. W.D.N.Y. Mar. 16, 2018); *In re Encore Prop. Mgmt.*, 585 B.R. 22 (Bankr. W.D.N.Y. 2018); *In re Rondaxe Props., LLC*, No. 15-20222, 2015 Bankr. LEXIS 2140 (Bankr.

---

[2]     Mr. Joyce may wish to familiarize himself with Rule 9011(b)(3) FRBP—and it would be a good idea to glance at Rule 9011(b)(1), (2) and (4) FRBP at the same time.

Case 2-19-20310-PRW, Doc 55-2, Filed 01/03/20, Entered 01/03/20 17:04:56, Description: Declaration of Barry M. Kazan, Page 9 of 18
Case 2-19-20310-PRW, Doc 55, Filed 01/03/20, Entered 01/03/20 17:07:56, Description: Main Document, Page 18 of 36

W.D.N.Y. June 30, 2015); *In re Seneca BioEnergy, LLC*, No. 14-21470, 2015 Bankr. LEXIS 1685 (Bankr. W.D.N.Y. May 19, 2015); *In re Spencerport Dev., LLC*, No. 14-21154 (PRW), 2014 Bankr. LEXIS 4909 (Bankr. W.D.N.Y. Dec. 4, 2014). Dismissal or conversion of a Chapter 11 case *must* be granted under 11 U.S.C. § 1112(b), if the moving party demonstrates cause, unless the Court finds that either of the exceptions created under § 1112(b)(1) or (b)(2) apply. *Anvil*, 595 B.R. at 628-29; *Rondaxe*, 2015 Bankr. LEXIS 2140, at *4-5; *Seneca*, 2015 Bankr. LEXIS 1685, at *6; *Spencerport*, 2014 Bankr. LEXIS 4909, at *3-4. Here, no party in interest has requested the appointment of a Chapter 11 trustee or examiner, and no "unusual circumstances" have been identified that would make conversion or dismissal contrary to the best interests of creditors. 11 U.S.C. § 1112(b)(1) and (2). The court finds that the exceptions under § 1112(b)(1) and (b)(2) do not apply in this case.

The moving party bears the initial burden to establish, by a preponderance of the evidence, the existence of cause to convert or dismiss a Chapter 11 case. *Anvil*, 595 B.R. at 629; *Rondaxe*, 2015 Bankr. LEXIS 2140, at *5; *Seneca*, 2015 Bankr. LEXIS 1685, at *7; *Spencerport*, 2014 Bankr. LEXIS 4909, at *4; 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. rev.). If the moving party establishes cause—and the Court finds (as it has) that the exceptions under § 1112(b)(1) and (b)(2) do not apply—the statute commands that the Court *must* convert or dismiss the Chapter 11 case. 11 U.S.C. § 1112(b)(1). Here, Access Point and the Town of Gates have demonstrated that cause to convert or dismiss exists. The facts, as testified to by Chief VanBrederode and Fire Marshal Tytler, demonstrate a substantial decline in the condition of the estate property—rendering it an immediate threat to public health and safety, and the Court finds that there does not exist a reasonable likelihood of rehabilitation given the nearly $7.0 million dollar secured debt load. *See* 11 U.S.C. § 1112(b)(4)(A). The Court finds that

Case 2-19-20361-PRW, Doc 522, Filed 01/13/20, Entered 01/13/20 17:04:58,
Description: Declaration of Barry M. Kazan, Page 19 of 36

knowingly operating a hotel without mandatory liability, casualty, workers' compensation and disability insurance for an extended period of time is gross mismanagement. *Id.* § 1112(b)(4)(B) & (b)(4)(C). FMBHC, operating through Mr. Butt, admits to making unauthorized use of cash collateral—and the Court finds that unauthorized use has been substantially harmful to Access Point. *Id.* § 1112(b)(4)(D). The Court finds that FMBHC has repeatedly failed to comply with Orders of the Court in this case. *Id.* § 1112(b)(4)(E). And, despite Mr. Joyce's assertion to the contrary, the Court finds that FMBHC has failed to timely provide information requested by the UST. *Id.* § 1112(b)(4)(H).

The record before the Court, including the eye witness testimony of Police Chief VanBrederode and Fire Marshal Tytler (concerning the threat that the condition of the property and the acts of Mr. Butt pose to public safety), demonstrates multiple bases upon which the Court can (and does) find cause to convert or dismiss under 11 U.S.C. § 1112(b)(1). The Court finds that there exists no reasonable justification for the many omissions and bad acts of FMBHC. Cause to convert or dismiss has been demonstrated under 11 U.S.C. §§ 1112(b)(1), (b)(4)(A)-(E) and (b)(4)(H).

## B.     <u>Dismissal Serves the Best Interests of Creditors</u>

The decision of whether to convert or dismiss this Chapter 11 case turns on which remedy will serve the best interests of creditors and the estate. Here, dismissal best serves those interests. FMBHC's bankruptcy case was filed for the sole purpose of stopping the foreclosure action against the hotel property. FMBHC has no significant unsecured debt—the unsecured debt is approximately 2% of the total debt in this case. This case is a two-party dispute between FMBHC and Access Point. FMBHC's efforts here appear to be nothing more than a litigation tactic to prevent Access Point from exercising its rights as a secured creditor under the loan

Case 2:19-20310-PRW    Doc 552    Filed 01/13/20    Entered 01/13/20 17:04:58,
Description: Declaration of Barry M. Kazan    Page 20 of 36

agreements. The state court has already appointed a Receiver to take possession of the property. In the Court's view, a third-party Receiver *must* take immediate control of this property, immediately assess the condition of the hotel, and if there exists a threat to the health and safety of the public, shut the hotel down—until adequate measures are taken to ensure the health and safety of the public.

The extra layer of relief sought by Access Point—dismissal with a bar to refiling for one year—goes a little too far. Access Point should be allowed to pursue its rights under New York State law. Accordingly, the Court finds that dismissal of this case serves the best interest of creditors and is most likely to protect the public from harm. However, the three Chapter 11 case filings by FMBHC in less than two months convince the Court that some bar to refiling is necessary to allow the state court action to go forward, unimpeded. It will also allow a disinterested third-party Receiver to take control of the hotel and make a reasoned assessment of whether this hotel should remain in operation in its present condition. In the exercise of its discretion, given the very troubling facts surrounding this case (and its two predecessors), the Court finds it necessary and appropriate to bar FMBHC from filing a Chapter 11 case for a period of 180 days from the closure of this case, under 11 U.S.C. § 105(a). This bar is intended to apply nationwide, and is limited to Chapter 11 cases.

## IV.

## CONCLUSION

The Court finds, in the exercise of its discretion, that dismissal of this case is in the best interests of creditors, the estate and the public. The motion of Access Point is **GRANTED** under 11 U.S.C. 11 U.S.C. §§ 1112(b)(1), (b)(4)(A)-(E) and (b)(4)(H). The case is **DISMISSED** under

Case 2:19-20310-PRW Doc 55 Filed 01/13/20 Entered 01/13/20 17:07:59 Description Declaration of Barry M. Kazan Page 21 of 36

11 U.S.C. § 1112(b)(1).  Access Point's request for stay relief is **MOOT**.  The request of Access

Point for a dismissal with a bar to refiling is **GRANTED**.  FMBHC is prohibited from filing a

Chapter 11 case in any jurisdiction within the United States **for a period of 180 days** from the

date this case is closed, under 11 U.S.C. § 105(a).  The 180-day bar to the Debtor filing a

Chapter 11 petition is intended to be nationwide in its application and extends to any person or

entity to whom the Debtor transfers or attempts to transfer the real property at issue in this case.

   **IT IS SO ORDERED.**


DATED: May 3, 2019                    _____/s/_____
      Rochester, New York             HON. PAUL R. WARREN
                                      United States Bankruptcy Judge

Case 2-19-20310-PRW, Doc 55, Filed 01/03/20, Entered 01/03/20 17:07:56,
Description: Declaration of Barry M. Kazan, Page 13 of 13
Case 2-19-20310-PRW, Doc 55-2, Filed 01/03/20, Entered 01/03/20 17:07:56,
Description: Main Document, Page 22 of 36

# EXHIBIT B

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2297979

Book    Page    CIVIL

Return To:
Maureen P. Ware
99 Exchange Blvd
Rochester, NY 14614

No. Pages: 11

Instrument: JUDGMENT OF FORECLOSURE AND SALE

Control #:        201912171652
Index #:          E2019001885

Date: 12/17/2019

Access Point Financial, LLC

Time: 4:20:24 PM

F.M. Butt Hotels Corp.
Butt, Shaista
Billitier Electric, Inc.
Green, Dianna
Sysco Guest Supply, LLC

Total Fees Paid:                            $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

ADAM J BELLO

MONROE COUNTY CLERK

At a Foreclosure Special term of the Supreme Court of the State of New York, held in and for the County of Monroe, at the Courthouse located at 99 Exchange Boulevard, Rochester, New York, 14614, on the 17th day of December, 2019

P R E S E N T:

Hon. J. Scott Odorisi
Justice of the Supreme Court

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

---

ACCESS POINT FINANCIAL, LLC (f/k/a ACCESS POINT FINANCIAL, INC.),

Plaintiff,

-against-

F.M. BUTT HOTELS CORP., SHAISTA BUTT, BILLITIER ELECTRIC, INC., DIANNA GREEN, SYSCO GUEST SUPPLY, LLC, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE,

Defendants.

---

**Index No. E2019001885**

**ORDER MODIFYING REFEREE REPORT IN PART AND CONFIRMING AS MODIFIED AND JUDGMENT OF FORECLOSURE AND SALE**

**Mortgaged Premises**
**911 Brooks Avenue**
**Rochester, NY 14624**
**Section 135.10, Block 1, Lots 1 and 5**

---

**UPON** the reading of the Affirmation of Barry M. Kazan, Esq. dated December 9, 2019, the Summons and Verified Complaint dated February 27, 2019 (the "Complaint"), the Notice of Pendency duly filed herein in the Office of the Clerk of the County of Monroe on February 27, 2019, and proof that all defendants have been duly served and the Affidavits of Service having

been duly filed, and more particularly referred to in the Affirmation of Barry M. Kazan, Esq. dated May 14, 2019, from which Affirmation it appears that this is an action to foreclose a mortgage upon real property situate in Monroe County; that the whole amount thereon, as alleged in the Complaint, is presently due and owing, with interest thereon; and upon the prior Order of this Court appointing Michael T. Pattison, Esq. as Referee (the "Referee") to ascertain and compute the amount due to Plaintiff and to examine and report whether the mortgaged premises can be sold in one or more parcels, by which report dated November 4, 2019, the Referee has reported that the sum of $7,635,526.78 is due and owing to Plaintiff as of November 4, 2019 and that interest has accrued since then and will continue to accrue at the *per diem* rate of $2,286.11 and that the mortgaged premises should be sold in one parcel; that Plaintiff has moved pursuant to CPLR 4403 to confirm said report in part and modify the report to state that the amount due and owing to Plaintiff as of November 4, 2019 is in fact $7,778,265.60; and the same having regularly come on to be heard before this Court, and after due deliberation;

**NOW** on motion of Thompson Hine LLP, attorneys for Plaintiff, it is:

**ORDERED** that the Motion is granted in its entirety; and it is further

**ORDERED, ADJUDGED AND DECREED** that said report of Michael T. Pattison, Esq. dated November 4, 2019 be, and the same is hereby, modified insofar as to state that the sum of $7,635,526.78 is due and owing to Plaintiff as of September 3, 2019, and that as of November 4, 2019, the amount of $7,778,265.60 is due and owing to Plaintiff, together with interest that has accrued since that date and will continue to accrue at the *per diem* rate of $2,286.11; and it is further

**ORDERED, ADJUDGED AND DECREED** that said report of Michael T. Pattison, Esq., dated November 4, 2019, as modified herein, be, and the same is hereby in all respects ratified and confirmed; and it is further

**ORDERED, ADJUDGED AND DECREED** that the mortgaged premises described in the Complaint in this action and as hereafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expense of sale and the costs of this action, as provided by the Real Property Actions And Proceedings Law, be sold within 90 days of the date of this Judgment, in one parcel at public auction at the Foreclosure Auction Area, 99 Exchange Boulevard, Rochester, NY 14614 by and under the direction of Michael T. Pattison, Esq., who is hereby appointed Referee for that purpose; that said Referee shall give public notice of the time and place of such sale in accordance with RPAPL § 231 in The Daily Record; and it is further

**ORDERED, ADJUDGED AND DECREED** that by accepting this appointment, the Referee certifies that he is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including but not limited to §36.2 (c) ("Disqualifications from appointment") and §36.2(d) ("Limitations on appointments based upon compensation"); and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Referee is prohibited from accepting or retaining any funds for himself or paying funds to himself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Referee shall conduct the foreclosure sale only if Plaintiff, its successors and/or assignees, or its representative is present at

3

the sale or the Referee has received a written bid and Terms of Sale from Plaintiff, its successors and/or assigns, or its representative; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the Referee does not conduct the sale within 90 days of the date of the judgment, Plaintiff may submit a letter application to the Court, on notice to Defendants, seeking a good cause extension of time for the Referee to conduct the sale as soon as reasonably practicable; and it is further

**ORDERED, ADJUDGED AND DECREED** that at the time of sale the Referee shall accept a written bid from the Plaintiff or the Plaintiff's attorney, just as though Plaintiff were physically present to submit said bid; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Referee shall accept the highest bid offered by a bidder who shall be identified upon the court record, and shall require the successful bidder to immediately execute Terms of Sale for the purchase of the property, and pay to the Referee, in cash or certified or bank check, ten percent (10%) of the sum bid, unless the successful bidder is Plaintiff in which case no deposit against the purchase price shall be required; and it is further

**ORDERED, ADJUDGED AND DECREED** that said Referee shall deposit the down payment and proceeds of sale as necessary in his IOLA account in his own name as Referee, in accordance with CPLR 2609; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Mortgaged Premises is to be sold on an "as-is"; "where-is"; "with-all-faults" physical order and condition, subject to the following, provided that they do not render title unmarketable: (a) the state of any facts that an accurate survey will show; (b) all covenants, restrictions, easements, declarations, rights of way, agreements and reservations, if any, of record and to any and all violations thereof; (c) any and

4

all building and zoning regulations, restrictions, ordinances and amendments thereto of the municipality, the State, the Federal Government, or any agency, bureau, commission or department in which said premises are situated, and to any violations or notices of violations of the same, including, but not limited to, reapportionment of lot lines, and vault charges, if any; (d) unpaid taxes, assessments and water rates with interest and penalty has accrued (e) any and all orders or requirements issued by any governmental body having jurisdiction against or affecting said premises and violations of the same; (f) any bankruptcy in which there is no automatic stay; (g) rights of tenants or persons in possession, if any; (h) prior mortgages and judgments, if any, now liens of record; (i) the right of redemption of the United States of America to redeem the Mortgaged Premises within 120 days from the date of sale, if any; (j) rights of any defendants pursuant to New York law, including CPLR 317, 2003 and 5015, or any appeal of the underlying action or additional litigation brought by any defendant or its successor or assignee contesting the validity of this foreclosure, if any; (k) outstanding condominium charges or other building maintenance charges, if any; (l) any and all hazardous materials including, but not limited to, flammable explosives, radioactive materials, hazardous wastes, asbestos or any material containing asbestos, and toxic substances; and; (m) any prior liens of record, if any, except those liens addressed in section 1354 of the Real Property Actions and Proceedings Law; and it is further

**ORDERED, ADJUDGED AND DECREED** that after the property is sold, the Referee shall execute a deed to the purchaser, in accordance with RPAPL §1353 and the terms of sale, which shall be deemed a binding contract; and it is further

5

**ORDERED, ADJUDGED AND DECREED** that, in the event a party other than the Plaintiff becomes the purchaser at the sale, the closing of title be held no later than 30 days after the date of such sale unless otherwise stipulated by all parties to the sale; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Referee then deposit the balance of said proceeds of sale in his own name as Referee in his IOLA account and shall thereafter make the following payments and his checks drawn for the purpose shall be paid by said depository:

FIRST:     The fees of said Referee for conducting the sale not to exceed $500.00 unless the property sells for $50,000.00 or more;

SECOND:     All taxes, assessments, and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments or water rates that have not become absolute, and any other amounts due in accordance with RPAPL §1354(2). Purchaser shall be responsible for interest and penalties due on any real property taxes accruing after the sale. The Referee shall not be responsible for the payment of penalties or fees pursuant to this appointment.

THIRD:     The expenses of the sale and the advertising expenses as shown on the bills presented by Plaintiff to said Referee and certified by said Referee to be correct, duplicate copies of which shall be annexed to the Referee's Report of Sale.

FOURTH:     Said Referee shall also pay, as directed by Plaintiff or Plaintiff's attorney, to the Plaintiff or Plaintiff's attorney, the sum of $7,778,265.60, said amount so reported due as aforesaid, together with interest thereon at the

6

*per diem* rate of $2,286.11 from and after November 4, 2019, the date to which interest was calculated in the Referee's Report, as modified herein, through and including the date of entry of this judgment, and also the sum $229,909.57 adjudged to the Plaintiff for attorneys' fees, costs and disbursements in this Action, with interest thereon from the date of entry of this judgment, at the statutory rate, together with an amount equal to any advances which Plaintiff has made as provided for in the subject note and mortgage subsequent to the date of the Referee's Report, including for taxes, penalties, insurance, or to maintain the Mortgaged Premises pending consummation of the foreclosure sale, not previously included in the computation set forth in the Referee's Report, and upon presentation of receipts for said expenditures to said Referee, all together with interest thereon computed at the rate provided for in the note and mortgage foreclosed herein, or so much thereof as the purchase money of the Mortgaged Premises will pay of the same.

FIFTH:     Surplus monies arising from the sale shall be paid to the Monroe County Director of Finance by the officer conducting the sale within five days after receipt in accordance with RPAPL § 1354(4) and in accordance with local County rules regarding Surplus Monies;

SIXTH     If such Referee intends to apply for a further allowance for his fees in addition to those provided for herein, an application shall be made to the Court therefore upon due notice to those parties entitled thereto; and it is further

7

**ORDERED, ADJUDGED AND DECREED** that in case the Plaintiff or its assignee be the purchaser of said Mortgaged Premises at said foreclosure sale, or in the event that the rights of the purchaser at said sale(s) and the terms of sale under this judgment shall be assigned to and be acquired by the Plaintiff or its assignee, and a valid assignment thereof filed with said Referee, said Referee shall not require the Plaintiff or its assignee to pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff or its assignee, a deed of the Mortgaged Premises sold upon the payment to said Referee of the amounts specified above in the items marked "FIRST" and "SECOND" above; that the Referee shall allow the Plaintiff to pay the amounts specified in "SECOND" when it is recording the deed; that the balance of the bid, after deducting therefrom the amounts paid by the Plaintiff or its assignee, shall be allowed to the Plaintiff or its assignee and applied by said Referee upon the amounts due to the Plaintiff or its assignee as specified in the items marked "THIRD" and "FOURTH" above; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the Plaintiff or its assignee, the Plaintiff shall pay to said Referee, upon delivery to Plaintiff of said Referee's deed, the amount of such surplus, that said Referee on receiving said several amounts from the Plaintiff shall deposit the balance in accordance with paragraph "FIFTH" above to be withdrawn only on the order of this Court, signed by a Justice of this Court; that said Referee make said Referee's Report of Sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the persons to whom the payment were made and file it with the Monroe County Clerk within (30) thirty days after completing the sale and executing the deed(s) to the purchaser or purchasers; and it is further

**ORDERED, ADJUDGED AND DECREED** that all expenses of recording the Referee's deed, including real property transfer tax, which is not a lien upon the property at the

8

time of sale, shall be paid by the purchaser, not by the Referee from sale proceeds, and that any

transfer tax shall be paid in accordance with Tax Law § 1404; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the proceeds of such sale(s) be

insufficient to pay the amounts due to the Plaintiff or its assignee as aforesaid with interest

thereon, Plaintiff or its assignee shall recover of and from defendant F.M. Butt Hotels Corp. and

defendant Shaista Butt, pursuant to the Mortgage Guaranty, the whole deficiency or so much

thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt

remaining unsatisfied after the sale of the Mortgaged Premises and the application of the

proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by

section 1371 of the Real Property Actions And Proceedings Law within the time limited therein,

and the amount thereof is determined and awarded by an order of this Court as provided for in

said section; and it is further

**ORDERED, ADJUDGED AND DECREED** that the purchaser or purchasers at said

sale be let into possession of the Mortgaged Premises on production or delivery of the Referee's

deed or deeds in accordance with CPLR 308; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the purchaser or purchasers at said

sale default(s) upon the bid and/or the terms of sale the Referee may place the property for resale

without prior application to the Court unless Plaintiff's attorneys shall elect to make such

application; and it is further

**ORDERED, ADJUDGED AND DECREED** that all defendants in this action, including

F.M. Butt Hotels Corp., and all persons claiming under them, or any of them, after the filing of

the Notice of Pendency, be and they are hereby forever barred and foreclosed of all right, claim,

lien, title, interest and equity of redemption in the Mortgaged Premises and each and every part thereof; and it is further

**ORDERED, ADJUDGED AND DECREED** that a copy of this Judgment with Notice of Entry shall be served upon F.M. Butt Hotels Corp., the Referee and any other party entitled to notice.

December 17, 2019

ENTER

HONORABLE J. SCOTT ODORISI
SUPREME COURT JUSTICE

10

EXHIBIT C

**Lanciault, Brian**

| | |
|---|---|
| **From:** | Kazan, Barry |
| **Sent:** | Monday, January 13, 2020 4:00 PM |
| **To:** | Lanciault, Brian |
| **Subject:** | FW: Mr. Butt / FM Butt Hotel |

**From:** Kazan, Barry
**Sent:** Wednesday, January 8, 2020 11:17 AM
**To:** dstern@elliottstern.com
**Subject:** Mr. Butt / FM Butt Hotel

David,

You're client is calling me directly. I am not going to speak to him without counsel.

If you represent him and you want to talk to me about the case, feel free to contact me.

Otherwise, it is just not appropriate. If he cannot speak through counsel, that speaks volumes.

**Barry M. Kazan** | Partner | **Thompson Hine LLP**
335 Madison Avenue, 12th Floor | New York, NY 10017
**Office:** 212.908.3921 | **Alternate:** 212.344.5680
**Fax:** 212.344.6101 | **Email:** Barry.Kazan@ThompsonHine.com
**Web:** http://www.ThompsonHine.com